[No. B146393. Second Dist., Div. One. Oct. 9, 2001.]

In re the Marriage of SCOTT K. and LISA C. LAUDEMAN.
SCOTT K. LAUDEMAN, Respondent, v.
LISA C. LAUDEMAN, Appellant.

## COUNSEL

Law Office of Robert M. Newell, Robert M. Newell; Law Office of Gary W. Kearney and Gary W. Kearney for Appellant.

Hahn & Hahn and Don Mike Anthony for Respondent.

## OPINION

**VOGEL (MIRIAM A.), J.**—With the court's approval, a father agreed to pay child support over and above the Statewide Uniform Child Support Guideline amount. (Fam. Code, § 4050 et seq.)[1] About a year later, the father asked the trial court to modify his child support obligation downward simply because he had agreed to pay more than the guideline amount. His request was granted. The mother appeals, attacking the modification order on the ground that the father failed to show a material change in his financial circumstances. The father defends the order he won below, claiming the trial court properly reduced his obligation to conform to the statewide guideline. We reverse on the ground that an order for child support based upon a stipulation to pay *more* than the guideline amount cannot be modified downward unless there are material changed circumstances.

### FACTS

The 16-year marriage of Scott K. and Lisa C. Laudeman was dissolved in July 1999. In conformance with a stipulation signed by Scott, Lisa, and their attorneys, the judgment provided for joint legal custody of the couple's two children, with primary physical custody granted to Lisa and substantial

[1]Undesignated section references are to the Family Code.

visitation to Scott. "Subject to modification," Scott was ordered to pay child support of $1,375 per month per child ($2,750 per month), plus 20 percent of his salary in excess of $182,000 per year as additional child support. The parties agreed they were "fully informed of their rights concerning child support," that they had agreed to the orders contained in the judgment "without coercion or duress," that the needs of the children would be adequately met by the stipulated orders, and that those orders were in the best interests of the children.

In July 2000, Scott (by then remarried) applied for an order modifying his child support obligation. In his supporting declaration, Scott said his annual salary was $90,000 plus a "performance bonus." In 1999, he said, his bonus was $136,500. He "anticipate[d] that [his] total annual income in 2000 [would] be about the same as in 1999." Thus, he said, his child support obligation for 2000 would be "$3,492, which is $515 per month over guideline support for [his anticipated] $226,500 income assuming [that Lisa would have] no income from employment." For that reason, he "request[ed] that [his] child support obligation be modified to guideline support based upon [his] 1999 income (which includes bonuses) and that the percentage support be eliminated. [He] further request[ed] that any order be based on such income as [Lisa] should be earning . . . ."

Lisa opposed Scott's request for modification, complained that he had reduced the amount of time he was spending with his children, and pointed to Scott's failure to allege any change of circumstances between the time of the judgment and the time of his requested modification. Lisa conceded that the 1999 stipulation provided for "child support which is slightly higher than guideline support," noted that she and Scott had included the required recitals in their stipulation (§ 4065), and asserted that, absent proof of changed circumstances, there could be no modification.

In November 2000, the trial court modified Scott's child support obligation by eliminating the percentage provision and reducing the monthly payments. Lisa appeals.

## Discussion

■ Lisa contends that, in the absence of material changed circumstances, the court was without jurisdiction to reduce Scott's child support obligation. Scott disagrees, claiming the trial court always has jurisdiction to modify child support to conform to the guidelines. We agree with Lisa.

### A.

California's guideline statutes have been compared, unfavorably, to the Internal Revenue Code. (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033,

1042, fn. 9 [31 Cal.Rptr.2d 749] [as "complicated as the Internal Revenue Code may be it uses percentages of income, not [the] algebraic formula" used by the guideline].) ██ The statutory scheme is unquestionably complex and convoluted, and the formula cannot be calculated without a computer and specially designed software, but its adoption was necessary "to ensure that this state remain[ed] in compliance with federal regulations for child support guidelines." (§ 4050; 42 U.S.C. § 667; see also Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2001) ¶ 6:130, p. 6-55 (hereafter Rutter, Family Law) [guideline exists to retain California's eligibility for federal funding of public assistance and child support enforcement programs].)[2] Among other things, the uniform guideline statutes require that, in determining the appropriate amount of child support (whether pendente lite, permanent, or on a request for modification of an existing order), all California courts must adhere to the guideline formula. (§ 4052 [the trial court "shall adhere to the statewide uniform guideline and may depart from the guideline only in the special circumstances set forth in this article"]; Rutter, Family Law, *supra*, ¶ 6:130, p. 6-55.)

### B.

 Under the uniform guideline statutes, divorcing parents may (subject to court approval and with exceptions that do not apply in this case) agree to child support orders in lieu of an order based upon the statutory formula. (§ 4065, subd. (a).) Indeed, stipulated child support is entirely consistent with the underlying guideline objectives, which are "to encourage fair and efficient settlements of conflicts between parents and . . . to minimize the need for litigation." (§ 4053, subd. (j); see also §§ 3585, 3901, subd. (b) [parents may agree to provide support in addition to the amounts required, and the court may inquire whether such an agreement has been made]; Rutter, Family Law, *supra,* ¶ 6:305, p. 6-141.)

When the parents stipulate to support that is *"below the guideline formula amount,"* they must "declare" that they are fully informed of their rights concerning child support, that they agreed to the order without coercion or duress, that the agreement is in the best interests of the children, that the needs of the children will be adequately met by the stipulated amount, and

---

[2]"Both federal and state law refer to a uniform statewide 'guideline' (or 'guidelines'); and the statutory formula for computing child support . . . is expressly labeled the 'statewide uniform *guideline.*' . . . However, the 'guideline' label is seriously misleading. The applicable statutes . . . are *far more than mere 'guidelines';* rather, they impose *mandatory requirements* with the intent that application of the statutory formula yield a *presumptively-correct* amount of child support. . . ." (Rutter, Family Law, *supra,* ¶ 6:131, p. 6-56.) Whether the formula ought to be less complex is debatable but fortunately irrelevant to the issue before us. (E.g., *In re Marriage of Fini, supra,* 26 Cal.App.4th at pp. 1039-1043.)

that the right to support has not been assigned to the county. (§ 4065, subd. (a), italics added; but see Rutter, Family Law, *supra,* ¶ 6:306, p. 6-141 [the text does not distinguish between stipulations that are below the guideline formula amount and those that are above it].) Here, although the amount Scott agreed to pay is above the guideline formula amount, the stipulation signed by Scott and Lisa includes the section 4065, subdivision (a), declarations.

 But whether *higher or lower*, and whether based on a *stipulation or on findings* made after a contested hearing, an order for child support in an amount "that differs from the statewide uniform guideline formula amount" triggers the court's sua sponte obligation to state, in writing or on the record, (1) the amount of support that would have been ordered under the guideline formula; (2) the reasons the ordered amount of support differs from the guideline formula amount; and (3) the reasons the ordered amount of support is consistent with the best interests of the children. (§ 4056, subd. (a); cf. § 4056, subd. (b) [additional findings required only when requested by a party]; *Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450-1452 [58 Cal.Rptr.2d 354] [the statement of reasons is mandatory, and trial court must "render the specified information sua sponte when deviating from the guideline formula"].)

 Although the statements required by subdivision (a) of section 4056 were not made when Scott's and Lisa's stipulated judgment was signed, the record is sufficient to show that, had the omission been called to the court's attention, the statements would have been made. The amount the guideline support would have been was not then and is not now disputed, and it is clear that the higher amount is in the best interests of the children. (§ 4056, subd. (a)(1), (3).) Where the order is for more rather than less, the reasons for the deviation are plainly irrelevant. (§ 4056, subd. (a)(2); see also § 4057 [the amount established by the guideline formula is presumptively correct but is rebuttable by admissible evidence showing that the parties have stipulated to a different amount under subdivision (a) of section 4065]; § 4065, subd. (a) [declarations required only when the stipulated amount is below the guideline formula amount]; cf. *Estevez v. Superior Court* (1994) 22 Cal.App.4th 423, 431 [27 Cal.Rptr.2d 470] [trial courts are implicitly authorized to waive otherwise mandatory findings when it is undisputed that payor parent is an "extraordinarily high earner"]; Rutter, Family Law, *supra,* ¶ 6:497.1, pp. 6-195 to 6-196 [on appeal, the required statement may be implied from a sufficient record].)[3]

---

[3]Had the parties used the proper Judicial Council form (Cal. Rules of Court, rule 1285.27, "Stipulation to Establish or Modify Child Support and Order," Jan. 1, 1995), their stipulation

At this point in our analysis, it is clear that Scott and Lisa were free to agree (as they did) that Scott would pay child support exceeding the guideline amount—but that their agreement was and remains subject to the trial court's continuing jurisdiction to modify child support.

## C.

"If the parties to a stipulated agreement stipulate to a child support order *below* the amount established by the statewide uniform guideline, no change of circumstances need be demonstrated to obtain a modification of the child support order to the applicable guideline level or above." (§ 4065, subd. (d), italics added.) Since there is no concomitant provision for stipulated child support orders *above* the amount established by the statewide uniform guideline, the ineluctable inference is that a "change of circumstances" *must* be demonstrated to obtain a downward modification of the child support order to the applicable guideline level or below. In short, the statute lets either party " 'renege' on the stipulation at any time, and without 'grounds,' " if the stipulated award is *below* the guideline amount (Rutter, Family Law, *supra,* ¶ 6-310, pp. 6-142 to 6-143), but otherwise adheres to pre-guideline law and requires proof of changed circumstances to reduce a higher award. *(In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1051 [237 Cal.Rptr. 770] [as a general rule, a material change of circumstances must be shown before a child support order may be modified]; *In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 548-549 [251 Cal.Rptr. 370].) Each case stands or falls on its own facts, but the overriding issue is whether a change has affected either party's financial status. *(Id.* at p. 549.)[4]

In the trial court, Scott did not suggest there were any changed circumstances affecting his child support obligation. The sole basis for his request was this: "I request that my child support obligation be modified to guideline

---

would have tracked the prescribed conditions and incorporated the required findings. (Rutter, Family Law, *supra,* ¶ 6:321, p. 6-147.)

[4]Section 4010 provides that, "[i]n a proceeding in which the court orders a payment for the support of a child, the court shall, at the time of providing written notice of the order, provide the parties with a document describing the procedures by which the order may be modified." In furtherance of that Legislative mandate, the Judicial Council drafted a form, "INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER." (Cal. Rules of Court, rule 1285.79, Jan. 1, 1999.) Among other things, the form explains that a child support order may be modified when: "The court takes several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net income of both parents is determined, along with the percentage of time each parent has physical custody of the child(ren). The court considers both parties' tax filing status and may consider hardships, such as a child of another relationship. *An existing order for child support may be modified when there has been a significant change in one of the parent's net income or a significant change in the parenting schedule or when a new child is born."* (Italics and boldface added.)

support . . . and that the percentage support be eliminated." On this appeal, he claims only that "[t]he state-wide uniform child support guidelines . . . express the public policy of California that courts 'shall adhere' to the guidelines . . . and set support based upon 'each parent's actual income and level of responsibility for the children.'" Implicit in this argument is the notion that his earlier generosity entitles him to withdraw from his agreement. He is mistaken.

As we have explained, a child support order based upon a stipulation to pay more than the uniform guideline formula amount cannot be modified downward unless the obligor presents admissible evidence of changed financial circumstances. Since Scott's modification request was not made or pursued on that basis, it follows necessarily that the trial court's order cannot stand.[5]

## DISPOSITION

The order modifying child support is reversed, and the cause is remanded to the trial court with directions to make such further orders as are necessary. Lisa is awarded her costs of appeal.

Spencer, P. J., and Ortega, J., concurred.

---

[5]In his respondent's brief, Scott claims in the alternative that his circumstances have in fact changed, but his discussion of this theory does not cite any *evidence* of such changes (it does not cite to the record at all). And although the order signed by the trial court includes findings about the parties' current finances, there are no findings about their finances at the time of the stipulated child support orders (which makes it impossible to determine from the record whether anything changed).